UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> MICHAEL A. HOUGER, ) <br> ) <br> Defendant. ) <br> ) | 3:07-cv-00183 JWS <br><br> ORDER AND OPINION <br><br> [Re: Motion at Docket 33] |

## I. MOTION PRESENTED

At docket 33, plaintiff United States of America moves for summary judgment pursuant to Fed. R. Civ. P. 56. At docket 36, *pro se* defendant Michael A. Houger ("Houger") opposes the motion. At docket 37, the United States replies. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

The United States filed the initial complaint on September 10, 2007.[1] The complaint alleges that, on April 16, 1991, Houger executed promissory notes for two private loans, in the amounts of $2625.00 and $1500.00 ("Loan A" and "Loan B,"

---

[1]Docket 1 at 4.

respectively),[2] and for one federal loan on January 12, 2000, in the amount of $10,733.42 ("Loan C").[3] The complaint further alleges that Houger has defaulted on all three of these loans.[4] Default judgment was entered against Houger on December 19, 2007.[5] The court vacated the default judgment because Houger did not know the court's address, and was unable to suitably answer the complaint.[6] The court ordered Houger to properly answer, and ordered the United States to confer with Houger.[7] Default judgment was again entered against Houger on April 15, 2008.[8] This judgment was vacated because the United States did not comply with the order to confer with Houger.[9]

Houger answered the complaint on June 11, 2008.[10] In his answer, Houger concedes that he signed for Loans A and B in 1991, but denies defaulting on them.[11] Houger alleges that he was under the impression that Loan C was meant to consolidate

---

[2] *Id.* at 2.

[3] *Id.* at 2 - 3.

[4] *Id.* at 3.

[5] Docket 7.

[6] Docket 9.

[7] Docket 10.

[8] Dockets 12 and 14.

[9] Docket 18 at 2.

[10] Docket 19.

[11] *Id.* at 1.

Loans A and B, but that he later learned that it was a new loan "in excess of $10,000."[12]
Houger states that he has been unable to correct this alleged mistake because he
"received no response from the Ford Federal Direct Loan Program."[13] He also alleges
that he was deliberately misled concerning the nature of Loan C.[14]

The United States originally moved for summary judgment on June 30, 2008,[15]
with a somewhat different set of facts than those in the complaint. In that summary
judgment motion, the United States argued that, in addition to Loans A, B, and C,
Houger took out two additional loans in June of 1990, for unknown amounts ("Loan X"
and "Loan Y").[16] The United States further argued that Loan C is a consolidation of
Loans X and Y, and that the principal, interest, and collection fees of Loans X and Y
became the principal of Loan C.[17] Additionally, the United States alleged that Chemical
Bank, the original private lender of Loans A and B, assigned its claims to the
Department of Education, which had referred the debts to the Department of Justice
pursuant to 31 U.S.C. § 3711(a)(1) and 34 C.F.R. § 30.1(a)(3).[18] In July of 2008, the
United States filed an unopposed motion for an extension of time in which Houger could

---

[12]*Id.* In his response to the current summary judgment motion, Houger states that the amount of $10,733.42 was not disbursed to him. Docket 36 at 1.

[13]Docket 19 at 1.

[14]Docket 15 at 6.

[15]Docket 21.

[16]*Id.*, at 2.

[17]*Id.* at 2 - 3.

[18]*Id.* at 3, 4, 5.

reply to the summary judgment motion,[19] in order to give both parties sufficient time to obtain old records.[20] Rather than extend the time, the court denied the original summary judgment motion without prejudice, and directed the United States to file a renewed motion for summary judgment after obtaining the records.[21]

On May 7, 2009, the United States filed the current motion for summary judgment.[22] In his response, Houger suggests that Loan C is a new loan, rather than a consolidation of Loans X and Y, and states that he never received a disbursement from Loan C.[23] He further alleges that the United States has not been conferring with him towards a resolution of these issues.[24] The United States, in its reply, argues that Loans A and B (not Loans X and Y, as stated in the motion) were consolidated into Loan C, which is why Houger did not receive a disbursement in 2000.[25]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to

---

[19]Docket 25.

[20]Docket 26 at 2.

[21]Docket 27.

[22]Docket 33.

[23]Docket 36 at 1.

[24]*Id.*

[25]Docket 37.

-4-

show that material facts are not genuinely disputed.[26] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[27] The party who bears the burden of proof on an issue may obtain summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."[28] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue of fact exists by presenting evidence indicating that certain facts are disputed so that a fact-finder must resolve the dispute at trial.[29] The court views this evidence in the light most favorable to the nonmoving party and draws all justifiable inferences from it in favor of the nonmoving party.[30]

## IV. DISCUSSION

There are significant inconsistencies in the evidence that prevent the court from granting summary judgment. For example, the United States argues in the current summary judgment motion that Loans X and Y were consolidated to form the principal of Loan C. The United States submits two loan applications as evidence of Loans X and Y, both of which are signed and dated by Houger.[31] Although the copies of these applications are in poor condition, the court notes that, on the application for Loan X, the

---

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[27] *Id.* at 325.

[28] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[30] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006).

[31] Docket 33, Exhibits 1 and 2.

-5-

"Amount Lender Approves" box lists ".00."[32] Similarly, the "Loan Amount Approved" box on the application for Loan Y also lists ".00."[33] Thus, the government's evidence suggests that the lender did not approve, and therefore Houger did not receive, Loans X and Y. Consequently, it is not reasonable to conclude that Houger has any outstanding debt on these two loans, or that they could have been consolidated into Loan C.

There are further inconsistencies concerning Loan C generally. Houger argues that Loan C was never disbursed.[34] The United States does not argue that Loan C was disbursed, but rather, it argues that Loan C is a consolidation of the preexisting debt of either Loans X and Y, or of Loans A and B.[35] However, as discussed above, Loans X and Y were apparently not approved, and thus could not provide the principal for Loan C. Because the United States argues that Loans A and B remain separate and outstanding,[36] they also could not have been consolidated into the principal for Loan C. The evidence and the arguments of the United States can be inferred to suggest that Loan C exists as a separate and independent loan, if indeed it exists at all.

Exhibit 6 to the government's current motion for summary judgment, its principal evidence for Loan C, appears to be constructed from three unrelated forms, none of

---

[32]*Id.*, Exhibit 1.

[33]*Id.*, Exhibit 2.

[34]Docket 36 at 1.

[35]Docket 33 at 2 - 3; Docket 37 at 1. The United States did not make these arguments in the complaint, but rather raised them initially in the original summary judgment motion, at Docket 21 at 2 - 3.

[36]Docket 21 at 3.

-6-

which appear to provide clear evidence of Houger's liability.[37]  The first form was signed and dated by Houger on January 12, 2000.  It appears to be a promissory note, at least in part, but does not include a loan amount or an interest rate.[38]  The second is a "Repayment Plan Selection" form, and was signed and dated by Houger on March 18, 2000, two months after the first form.  The repayment plan form is also silent as to a loan amount or an interest rate.[39]  The third form is a Federal Direct Consolidation Loan Verification Certificate.[40]  This certificate, as well as a second, similar certificate, was previously submitted as an exhibit to the original summary judgment motion.[41]  The United States argues that Houger submitted both of these certificates.[42]  The first certificate is dated February 2, 2000, and the second is dated February 28, 2000.  Neither has been signed or dated by Houger.  The "Principal Balance Outstanding" sections of both certificates list the amounts $2487.46 and $2846.51.  These totals are presumably meant to reflect the principal amounts of Loans X and Y.  As noted above, however, it appears that these loans were not approved.  If that is correct, these sums cannot reflect the principal of Loans X and Y, and the United States has not presented an alternative explanation.

---

[37] Docket 33, Exhibit 6.

[38] *Id.*, Exhibit 6 at 1.

[39] *Id.*, Exhibit 6 at 2.

[40] *Id.*, Exhibit 6 at 3.

[41] The certificate that was resubmitted at Docket 33, Exhibit 6 at 3 was originally submitted at Docket 21, Exhibit 1 at 3.  The certificate that was not resubmitted is at Docket 21, Exhibit 1 at 2.

[42] Docket 33 at 3.

There are inconsistencies in the principal amount for Loan B as well. The United States argues that the amount of Loan B was $1500.00,[43] which Houger concedes.[44] However, the government states that this amount is actually $1,511.00 later within the same motion,[45] and the Department of Education Certificate of Indebtedness states that the principal is $1,511.10.[46] Although minor, these irregularities are troubling when viewed in the context of the other evidentiary inconsistencies.

The Certificates of Indebtedness, originally presented with the complaint, create further difficulties.[47] These certificates are the only documents that state the interest rates of Loans A, B, and C. They are the only documents that state that Loans A and B were assigned from the original lender to the Department of Education.[48] The third certificate is the only document that clearly states the total principal of Loan C.[49] Therefore, the version of events described by the United States is highly dependent upon these certificates. However, the United States has offered no explanation regarding the origin of the certificates. The dates place them as having been prepared shortly before the United States filed suit, and the signatory holds the title of "Loan

---

[43] *Id.* at 2, 3.

[44] Docket 15 at 6, ¶ 1.

[45] Docket 33 at 4.

[46] *Id.*, Exhibit 9.

[47] The certificates first appear at Docket 1, Exhibit 1. They have been most recently resubmitted at Docket 33, Exhibits 8, 9, 10.

[48] The Chemical Bank statement at Docket 33, Exhibit 5 at 3 suggests that at least one loan was "assigned," but states neither which loan, nor to whom it was assigned.

[49] Docket 33, Exhibit 10.

-8-

Analyst Litigation Support." These details, particularity when viewed in the light of the other evidentiary inconsistencies, create doubt about the accuracy of the certificates.

The United States asks for summary judgment on claims that are inconsistent with the original complaint. In addition, the documents on which the claims are based are vague and subject to multiple interpretations. In light of the above, the court concludes that there are genuine and unresolved issues of material fact, and consequently denies summary judgment for the United States.

## V. CONCLUSION

For the reasons set forth above, the United States' motion for summary judgment at docket 33 is **DENIED**.

DATED at Anchorage, Alaska, this 24th day of July 2009.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE